UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIANWEI LIU,<br><br>                    Petitioner,<br><br>          v.<br><br>JAMES JANECHA, et al.,<br><br>                    Respondents. | Case No. 5:26-cv-03627-SSC<br><br>MEMORANDUM AND ORDER |

Petitioner has filed a counseled habeas petition seeking release from immigration custody.  It is Petitioner's second petition before this Court.  The first petition challenged Petitioner's parole revocation/re-detention and sought either a bond hearing or release.  Consistent with the Court's order on the first petition, Petitioner received an individualized bond hearing before an immigration judge, who determined that Petitioner was a flight risk and therefore denied bond. The new petition challenges that determination on due process grounds. This challenge fails because Petitioner has not exhausted his administrative remedies nor demonstrated that exhaustion should be waived.  The new petition also revives Petitioner's challenge to the fact of his re-detention as presented in the first petition.  This time Petitioner argues that only release can cure his pre-deprivation harm. The Court disagrees.

**I**

On July 1, 2026, Petitioner Tianwei Liu filed this petition for writ of habeas corpus by person in federal immigration custody pursuant to 28 U.S.C. § 2241.  (ECF 1.)  This is Petitioner's second habeas petition.  In the first, Petitioner alleged that the parole granted by immigration authorities in 2022 was improperly revoked at a check-in in April 2026; he sought either a release or a bond hearing.  *Liu v. Mullin*, No. 5:26-cv-01697-SSC, 2026 WL 1105035, at *1 (C.D. Cal. Apr. 17, 2026).  Respondents took the position that Petitioner was a member of the bond-eligible class in *Maldonado Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), and thus, consistent with the relief afford to class members, the Court conditionally granted Petitioner's previous petition and enjoined Respondents from continuing to detain Petitioner unless no later than April 24, 2026, he was provided with an individualized bond hearing at which the government must bear the burden of showing by clear and convincing evidence that Petitioner poses a flight risk or danger to the public, and the immigration judge must exercise discretion to make an individualized determination whether Petitioner should be detained pending removal proceedings.  *Liu*, 2026 WL 1105035, at *2.

Petitioner received a bond hearing on April 24, 2026.  (ECF 1 at 2; ECF 7-2 at 1.)  The immigration judge's (IJ) lengthy and considered ruling is in the record.  (ECF 1-2 at 2–5; ECF 7-2.)  The IJ denied bond, finding that although Petitioner "is not a danger to the community[,]" Respondents "established by clear and convincing evidence that [Petitioner] is a flight risk."  (ECF 7-2 at 1.)  The IJ's order detailed the evidence considered.  (*Id.* at 1–4.)  The IJ summarized the reasons for the flight-risk finding: Petitioner "is a recent illegal entrant who has no

2

family ties to the United States with no avenues for permanent status in the United States outside of asylum and related relief, which is speculative." (*Id.* at 3.)  The IJ's order recognized that Petitioner has "letters of support from his coworker and friends" and that Petitioner's sponsor testified at the hearing.  (*Id.* at 2.)  Petitioner reserved his right to appeal the IJ's decision.  (*Id.* at 4.)

The new petition raises three due process challenges to the bond hearing, and also revives the unlawful re-detention claim from the original petition.  (ECF 1 at 8–11.)  Specifically, the petition brings four claims: (1) a due process claim arguing that the flight-risk finding rests on impermissibly speculative and generic factors and fails to apply the governing standard; (2) a due process claim arguing that the IJ failed to consider and meaningfully weigh probative evidence of community ties and compliance; (3) a due process claim arguing that the IJ failed to consider ability to pay and alternative conditions of release; and (4) a due process claim arguing that Petitioner's re-detention without a pre-deprivation hearing was unlawful and that no after-the-fact bond hearing can cure that violation.  (*Id.*)  Petitioner seeks release.  (*Id.* at 11–12.)

On July 8, 2026, Respondents filed an answer.  (ECF 7.) Respondents argue that Petitioner has not exhausted his administrative remedies and that, even were exhaustion excused, Petitioner's due process claims would fail on the merits because the appropriate remedy is a *Rodriguez* prolonged detention bond hearing, which Petitioner will receive at or after six months of detention.  (*Id.* at 3–5.)  On July 9, 2026, Petitioner filed a reply.  (ECF 8.)

The Court finds this matter appropriate for resolution without oral argument.  *See* Fed. R. Civ. P. 78; L.R. 7-15.

**II**

Relief in the form of a writ of habeas corpus may be granted to a person in custody under the authority of the United States if the petitioner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

**III**

Taking Petitioner's re-detention argument first, this claim fails. Petitioner obtained the relief sought for his re-detention, namely, a bond hearing consistent with the Court's order in *Liu*, 2026 WL 1105035, at *2.  (ECF 1 at 2; ECF 7-2 at 1.)  He now wants different relief on that claim through a second petition arguing that the unopposed relief he sought and obtained could not cure his pre-detention deprivation(s), and that release is the only remedy.

Even assuming, without deciding, that the government failed to comply with the statutory or regulatory requirements governing the initiation of Petitioner's custody, Petitioner has not shown that release from custody is an available remedy.  The dispositive question in this habeas proceeding is not whether Petitioner's arrest was procedurally defective, but whether he is presently entitled to release from custody. *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923).  He is not.  As the Supreme Court explained more than a century ago, "[a] writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be

discharged for defects in the original arrest or commitment." *Id.* (citation modified).  The Supreme Court reaffirmed that principle in *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1040 (1984).  Petitioner has received a bond hearing and the present detention is therefore based on his ongoing removal proceedings and the IJ's custody determination, rather than solely on the circumstances of his initial arrest.  Whatever defect may have occurred in the initiation of Petitioner's custody, Petitioner has not shown that it renders his present detention unlawful or that release is the appropriate remedy.  *See Tsendayush v. Bondi*, No. 5:26-CV-00970-SB-KES, 2026 WL 1880177, at *2 (C.D. Cal. June 30, 2026) (declining to grant release based on alleged violations of the Immigration and Nationality Act (INA) and its implementing regulations and collecting cases ruling similarly); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022) (reasoning that under *Mathews v. Eldridge*, 424 U.S. 319 (1976), courts must "consider the process [petitioner] received [while detained]" and "the further process that was available to him"); *Aguilar v. Semaia*, No. 5:26-cv-00023-MCS-SSC, 2026 WL 166906, at *4–5 (C.D. Cal. Jan. 16, 2026) (denying request for immediate release from immigration detention in light of post-detention process provided, including a bond hearing).

Turning to Petitioner's attack on that post-deprivation process, it too fails.  The IJ's order indicated that Petitioner reserved his appeal to the Board of Immigration Appeals (BIA).  (ECF 7-2 at 4.)  However, it is unclear whether Petitioner ultimately filed an appeal.  The deadline to file an appeal to the BIA had passed when the petition was filed.  The petition suggests that no appeal was timely filed.  (ECF 1 at 5 ("The 30-day deadline to appeal the April 24, 2026 order expired on May 22, 2026; any appeal now would almost certainly be dismissed as

untimely.").)  Regardless, Petitioner has not exhausted his administrative remedies.

An immigration detainee who loses a bond hearing has a direct administrative remedy: appeal to the BIA.  *See* 8 C.F.R. §§ 1003.1(b), 1003.19(f), 1003.38.  The BIA reviews *de novo* all "questions of law, discretion, and judgment" from the decisions of immigration judges.  8 C.F.R. § 1003.1(d)(3)(ii).  It also reviews for clear error any findings of fact, "including findings as to the credibility of testimony."  8 C.F.R. § 1003.1(d)(3)(i); *see Vitug v. Holder*, 723 F.3d 1056, 1063 (9th Cir. 2013).  As a result, the Ninth Circuit has held that the detainee must first "exhaust[] administrative remedies by appealing to the BIA before asking the federal district court to review the IJ's decision."  *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).  Although exhaustion is not statutorily mandated under § 2241, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief[.]" *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012).

Indeed, every principal published Ninth Circuit decision on this subject has usually involved review of a final BIA decision—not an IJ's order standing alone.  *See, e.g., Martinez v. Clark*, 124 F.4th 775, 785–86 (9th Cir. 2024).  And even when exhaustion is later excused (for reasons to be discussed below), the petitioner has still at least appealed to the BIA.  *See, e.g., Singh v. Holder*, 638 F.3d 1196, 1200–01 (9th Cir. 2011).  These cases thus recognize that direct review of immigration detention decisions belongs with the BIA in the first instance—not federal habeas courts.

The three structural reasons on which the Ninth Circuit relies to enforce administrative exhaustion are present here, too.  *See Puga v.*

6

*Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). First, the BIA has subject-matter expertise in reviewing bond determinations, *see* 8 C.F.R. § 1003.1(b)(7)—expertise particularly valuable here given Petitioner's complaint that the IJ's order failed to properly weigh evidence. BIA review would help generate the BIA's own order evaluating whether that weighing was adequate.

Second, if Petitioner could skip the BIA, then every noncitizen denied bond has a shortcut to federal court. That inverts the administrative remedy scheme and is precisely the "improper shortcut" that the Ninth Circuit prohibits. *Leonardo*, 646 F.3d at 1160. After all, the IJ's order is not the agency's final word. It is the first step in a process designed to produce a reasoned decision at the administrative appellate level. Only then would the administrative record be complete. And only then would a federal court have the considered agency decision that federal courts can review—especially considering that it is limited even more by jurisdictional limits in 8 U.S.C. § 1226(e). *See generally Martinez*, 124 F.4th at 785–86.

Third and last, the BIA can correct the alleged deficiencies Petitioner identifies, if warranted. *See, e.g.*, *Aden v. Nielsen*, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) ("[T]he BIA is capable of . . . determining whether the government has carried its burden of demonstrating by clear and convincing evidence that [petitioner] is a current danger [or flight risk] and must be detained.") (citing *Morgan v. Gonzales*, 495 F.3d 1084, 1090 n.2 (9th Cir. 2007)).

As noted above, exhaustion in immigration habeas cases is prudential, not jurisdictional. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Still, federal courts excuse it only where "administrative remedies are inadequate or not efficacious, pursuit of

administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). Those exceptions are necessarily narrow, and the Ninth Circuit has applied them only where the detainee's challenge is essentially to the legal framework itself—not to how a particular immigration judge applied that framework in a particular case.

In *Singh*, for instance, the court bypassed exhaustion on what standard of proof the Constitution requires at prolonged-detention hearings for those mandatorily detained. 638 F.3d at 1203 n.3, 1205. The court explained that this was a "purely legal" issue for which "a record of administrative appeal is not germane[,]" that waiving exhaustion would not encourage deliberate bypass because the legal question—once resolved—would not recur, and that the BIA could not obviate the need for a federal ruling. *Id.* The court also emphasized that Singh had been detained for nearly four years. *See id.* Similarly, in *Hernandez*, the court waived exhaustion for a class-wide challenge to the bond framework—specifically, whether immigration judges must consider ability to pay and alternatives to detention. 872 F.3d at 988–89. There again, the claims were "purely legal," the BIA's position was fixed through its own precedents, and the challenge raised a discrete systemic question that would not recur once resolved. *Id.*

Petitioner's claim resembles neither those cases. Petitioner argues that prudential exhaustion should be excused here because his claims present "constitutional and legal questions—whether the Immigration Judge applied the correct legal standard and considered legally required factors—that require no further administrative fact-finding and lie outside the agency's special expertise." (ECF 1 at 5.)

Petitioner further argues that because the deadline to file an appeal has since passed, any appeal at this time would be summarily dismissed by the BIA. (*Id.*) Petitioner has not sufficiently established that waiver is warranted.

To the extent Petitioner challenges how the IJ applied discretionary detention factors to his case, that is a case-specific claim about the adequacy of one decision in one proceeding—exactly the kind of claim the BIA was designed to review. The BIA has not adopted any position foreclosing relief on such a claim. And Petitioner's detention does not approach the extended duration that supported *Singh*'s excusal.

The Court recognizes that continued detention is not cost-free. But every noncitizen denied bond by an immigration judge is detained during the pendency of an appeal. That is intrinsic not only to appellate review but inherent in the system Congress designed. So if the ordinary delay of administrative review—and its corresponding extension of a petitioner's detention—constituted "irreparable injury" sufficient to excuse exhaustion, then it would be excused in every bond denial. *Leonardo*'s default rule would be a dead letter. *See Yu v. Noem*, 2026 WL 1042213, at *3 (E.D. Cal. Apr. 17, 2026) ("[E]xcusing exhaustion on that basis would cause the exception to swallow the rule."). So while the time needed to complete a BIA appeal may tip against enforcement of exhaustion in some cases with compelling facts, it is not enough on its own in the mine run of immigration detentions. *See McCarthy v. Madigan*, 503 U.S. 140, 147–49 (1992); *Leonardo*, 646 F.3d at 1160. So it is here.

# ORDER

For the reasons set forth above, **IT IS ORDERED** that Judgment shall be entered denying the petition.

DATED: July 27, 2026

_____
HONORABLE STEPHANIE S. CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE

10